2020 IL App (1st) 170838-U

No. 1-17-0838

Order filed February 14, 2020

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 14851 |
| | ) | |
| HANCEY McDOWELL, | ) | Honorable |
| | ) | Timothy Joseph Joyce, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE DELORT delivered the judgment of the court.
Presiding Justice Hoffman and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Summary dismissal of defendant's postconviction petition is affirmed over his contention that he presented an arguable claim that trial counsel was ineffective for failing to review DNA evidence tendered by the State.

¶ 2    Following a jury trial, defendant Hancey McDowell was found guilty of four counts of aggravated criminal sexual assault (720 ILCS 5/12-14(a)(2) (West 2006)). The trial court merged two of the counts and sentenced defendant to two consecutive terms of 18 years in prison. Defendant now appeals from the first-stage dismissal of his *pro se* petition for relief pursuant to

the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). On appeal, defendant contends that summary dismissal was improper because he raised a nonfrivolous claim that trial counsel was ineffective for failing before trial to review DNA evidence tendered by the State that pertained to an other-crimes witness. We affirm.

¶ 3    At trial, T.G. testified that defendant, whom she identified in court, sexually assaulted her on July 20, 2006. T.G. was featured on an escort website. She received a call at 3 a.m. on the date in question from a man named "George" who asked her to come to his house in Chicago. When she arrived, defendant grabbed her before she was able to knock on the door. Defendant told her that she was at the wrong house, and, holding her arm, ran with her into the basement stairwell of a building next door. Defendant pulled out a black revolver, placed the gun to T.G.'s head, and told her not to move or he would kill her. Defendant then said "suck my dick, bitch" as he grabbed the back of T.G.'s neck and forced his penis into her mouth until he ejaculated. He also pulled up T.G.'s shirt, sucked her breasts, and told her to turn around before throwing her against the concrete steps. Defendant ordered T.G. to remove her pants or he would kill her. She complied, and defendant penetrated her vagina with the gun before putting a condom on his penis and forcing it into her anus while she "was on all fours." Defendant left the scene with T.G.'s purse. Following the incident, T.G. went to the hospital where buccal swabs were taken from her and the police were contacted. Nearly two years later, police contacted T.G. and told her that they "had a DNA match." On April 16, 2008, T.G. identified defendant as the man who sexually assaulted her in a photo array at the police station, and then again in a lineup on July 17, 2008.

¶ 4    Illinois State Police Forensic Scientist Pauline Gordon testified that she analyzed DNA profiles extracted from swabs taken from T.G. and buccal swabs taken from defendant. She found that a DNA profile recovered from T.G.'s mouth matched the DNA profile of defendant.

¶ 5    In accordance with the trial court's ruling on the State's motion to admit evidence of other sex offenses, C.D. and O.R. testified.

¶ 6    C.D. testified that she met defendant, who called himself "Keith," and whom she identified in court, at a gas station in early June of 2007. C.D. gave defendant her telephone number. He later called her from "708-757-****." C.D. agreed to meet defendant at his residence near 207th Place and Sandridge Drive in Lynwood, Illinois. At about 11 p.m. on June 11, 2007, C.D. parked her car and started walking toward his house. Defendant grabbed her, pressed a silver gun to the back of her head, and threatened to kill her. Defendant took C.D. to the rear of the house on Sandridge Drive, ordered her to strip, and went through her pockets, taking her cell phone. He then ordered her at gunpoint to get down on her knees and "suck [his] dick." C.D. complied and defendant told her to "get on all fours." He forced his penis into C.D.'s vagina. Defendant fled when a woman stepped out of a nearby house and turned on a light. A few hours later, C.D. reported the incident to police, and then went to the hospital, where a rape kit was administered. On July 17, 2007, C.D. positively identified defendant as her assailant in a lineup at the police station.

¶ 7    Lynwood police detective Alberto Castillo testified that on July 16, 2007, defendant was pulled over for an unrelated traffic stop about a block from the location where C.D. had been assaulted. Defendant told Castillo that his name was Keith Moore, gave his phone number as "708-757-****," and provided a home address a few houses from the location of C.D.'s assault. Castillo arrested defendant and took him to the police station, where he eventually determined defendant's

true name. Later that day, C.D. identified defendant at the police station. Defendant agreed to provide a buccal swab. Castillo then released defendant pending DNA testing.

¶ 8    Tanis Wildhaber Pfoser, a forensic scientist, testified that she compared the DNA analysis test results on stains from C.D.'s blue jeans with the DNA test results from defendant's buccal swab. During Wildhaber Pfoser's testimony, defense counsel objected and asked for a sidebar. There, defense counsel initiated the following exchange:

"[DEFENSE COUNSEL]: Judge, the Court knows about the Supreme Court Rule when you use DNA, you have to have the package. We're entitled to the package, all the work that they did and so on like that. I received it on [T.G.]. I didn't receive that stuff on [C.D.] or [O.R.].

Remember the State was indicating [in pretrial proceedings] something about okay, now, then we're not going to use DNA; but if [the defense] can argue about it, we're going to use it, which is fine. But they didn't tender it.

\* \* \*

[ASSISTANT STATE'S ATTORNEY]: You have that.

[DEFENSE COUNSEL]: Oh. Ma'am, I'm not fighting. It may have been tendered and I lost it and it's in the basement somewhere. I'm not saying they didn't tender it. We just don't have it now in our book, Judge, and we're pretty good with all that stuff."

The Assistant State's Attorney reiterated that she had tendered "the 417 material,"[1] to which defense counsel responded, "Whatever was given to [defense co-counsel] I have. I can't stand here and say I have it or I don't because I'm not going to say that to you." After defense counsel made that statement, the trial court ruled as follows:

> "In light of that representation, in light of the fact that you are in receipt of Illinois State Police reports, police laboratory reports regarding the analysis of the [C.D.] and [O.R.] DNA workups, whatever those were, and in light of the fact that it appears what you're saying you may have it, I'm going to respectfully overrule your objection."

Wildhaber Pfoser testified that the major DNA profile found on C.D.'s blue jeans matched defendant's profile.

¶ 9 O.R. testified that she worked on an adult entertainment website and, after being contacted by a stranger after midnight on October 5, 2007, she agreed to meet him. The caller indicated his name was "Dave," and called her from the phone number "708-757-****." O.R. parked at the agreed location on Sandridge Drive. When she got out of the car, she saw defendant, who identified himself as "Dave," and whom she identified in court, walking towards her. After the two walked to the rear of a nearby house, defendant brandished a knife and placed it up to O.R.'s throat. Defendant demanded that O.R. "suck [his] dick," and O.R. complied out of fear for her life. Defendant ejaculated on O.R.'s chest and in her mouth, and then he demanded a condom, which O.R. gave him. Defendant made her bend over on all fours while he put the condom on his penis. He forced his penis into O.R.'s vagina for about a minute and then told her to leave. O.R. had to

---

[1] Illinois Supreme Court Rule 417(b)(i) (eff. Mar. 1, 2001) requires the proponent of DNA evidence to provide to the adverse party copies of "the case file," including all reports and data relating to the testing performed. *People v. Wright*, 2012 IL App (1st) 073106, ¶ 10.

drive to the nearest gas station to call the police because defendant took her cell phones. O.R. was taken to the police station where she was presented with a photo array and identified defendant as her assailant. She then went to the hospital where she was treated and a rape kit was administered.

¶ 10    Following closing arguments, the jury found defendant guilty of four counts of aggravated criminal sexual assault. Defendant filed a motion for a new trial, which the trial court denied. The trial court merged two of the counts and sentenced defendant to two consecutive terms of 18 years in prison. Defendant's motion to reconsider sentence was denied.

¶ 11    On direct appeal, defendant contended that the trial court abused its discretion in granting the State's motion to admit evidence of two separate prior sexual assaults to show his propensity to commit sexual offenses and to prove identity. We affirmed and amended the mittimus to award defendant additional days of presentence custody credit. *People v. McDowell*, 2014 IL App (1st) 121479-U.

¶ 12    On September 1, 2015, defendant filed the *pro se* postconviction petition at issue in the instant appeal, identifying eight claims of error. As relevant here, defendant argued in "Claim #7" that trial counsel was ineffective for failing to prepare an adequate defense and prepare for trial, and that appellate counsel was ineffective for failing to raise this claim on direct appeal. Specifically, defendant argued that defense counsel failed to review discovery information disclosed by the State. Citing to pages of the transcript that contained Wildhaber Pfoser's DNA testimony, defendant argued:

> "During the course of trial counsel clearly displayed how unprepared he was in preparing
> an adequate defense when trial counsel objected to the introduction of evidence counsel
> claimed was not disclosed prior to trial. [Record citation.] Trial counsel stated to the court,

'It may have been tendered and I lost it.' The clear acknowledgment by counsel to the court clearly shows counsel did not adequately prepare for petitioner's trial which caused prejudice because petitioner has a U.S. and Illinois constitutional right to have the effective assistance of counsel and clearly that right was denied by counsel admitting to losing parts of discovery. Had counsel adequately reviewed the discovery, counsel could have prepare[d] an adequate defense. The failure to review all tendered discovery caused prejudice because counsel conducted petitioner's trial without all the relevant information needed to properly prepare an adequate defense, an adequate cross-examination and properly challenge the prosecution's case. Appellate counsel was ineffective for failing to raise this claim on direct review."

For support, defendant attached his own notarized affidavit averring that the facts contained in his petition were true and accurate.

¶ 13    On November 24, 2015, the trial court entered a written order, summarily dismissing the petition as frivolous and patently without merit.

¶ 14    On April 3, 2017, defendant filed a motion for leave to file late notice of appeal. This court denied the motion. On August 30, 2017, the Illinois Supreme Court entered a supervisory order directing us to allow defendant leave to file a late notice of appeal. Pursuant to the supervisory order, we vacated our earlier denial and granted leave. Defendant thereafter filed a late notice of appeal on November 7, 2017.

¶ 15    On appeal, defendant contends that his petition should not have been summarily dismissed because it stated a nonfrivolous claim that trial counsel was ineffective for not reviewing the DNA

evidence tendered by the State and appellate counsel was ineffective for not raising the issue on direct appeal.

¶ 16    In cases not involving the death penalty, the Act provides a three-stage process for adjudication. 725 ILCS 5/122-1 (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). This case involves the first stage of the process, during which the trial court independently assesses the petition, taking the allegations as true. *Hodges*, 234 Ill. 2d at 10. Based on this review, the trial court must determine whether the petition "is frivolous or is patently without merit," and, if it so finds, dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2016).

¶ 17    A petition may be dismissed as frivolous or patently without merit "only if the petition has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 16. A petition has no arguable basis in law when it is founded in "an indisputably meritless legal theory," for example, a legal theory that is completely belied by the record. *Id.* A petition has no arguable basis in fact when it is based on a "fanciful factual allegation," which includes allegations that are "fantastic or delusional" or contradicted by the record. *Id.* at 16-17; *People v. Morris*, 236 Ill. 2d 345, 354 (2010). Any issues raised and decided on direct appeal are barred by the doctrine of *res judicata*, and issues that could have been raised but were not are forfeited. *People v. Tate*, 2012 IL 112214, ¶ 8. Our review of a first-stage dismissal is *de novo*. *Hodges*, 234 Ill. 2d at 9. Pursuant to this standard, we review the trial court's judgment, not the reasons given for it. *People v. Jones*, 399 Ill. App. 3d 341, 359 (2010).

¶ 18    Traditionally, to establish ineffective assistance of counsel, a defendant must show (1) that counsel's representation fell below an objective standard of reasonableness; and (2) but for counsel's errors, there is a reasonable probability that the result of the trial would have been

different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). However, our supreme court has indicated that in the context of first-stage postconviction proceedings, a defendant need not conclusively establish these factors; in *Hodges*, our supreme court held that "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. Where a claim of ineffectiveness may be disposed of on the ground of lack of sufficient prejudice, "that course should be followed." *Strickland*, 466 U.S. at 694.

¶ 19    Defendant argues that his petition set forth a nonfrivolous claim that trial counsel was ineffective for not reviewing the DNA evidence tendered by the State. Defendant asserts that counsel's statement at trial that he may have lost the materials tendered by the State shows that he did not review the discovery, which was arguably unreasonable because Wildhaber Pfoser was listed in the State's discovery answer as a potential witness and because challenging the sexual assault committed against C.D. was of crucial importance to the defense strategy of attacking the victims' credibility. Defendant argues that he was arguably prejudiced by counsel's failure to review the DNA evidence because it rendered his cross-examination of Wildhaber Pfoser incoherent, confusing, and "woefully inadequate." Defendant maintains that the record does not rebut that counsel would have been able to undermine the State's propensity evidence had he fully reviewed the discovery and thus effectively cross-examined Wildhaber Pfoser.

¶ 20    As an initial matter, we address the State's argument that the claim defendant is making now was not included in his postconviction petition. As the State sees it, defendant is now arguing that counsel "did not adequately prepare for petitioner's trial as a whole." We disagree. In his

opening and reply briefs, defendant contends that his petition stated a claim that trial counsel was ineffective for not reviewing the DNA evidence tendered by the State. In his petition, defendant asserted that trial counsel failed "to review the discovery in regards to the information disclosed by the State," and "displayed how unprepared he was in preparing an adequate defense when trial counsel objected to the introduction of evidence counsel claimed was not disclosed prior to trial. [Record citation.] Trial counsel stated to the court, 'It may have been tendered and I lost it.' " While defendant did not refer to Wildhaber Pfoser by name or use the term "DNA," it is clear from his citation to the record and his quotation of trial counsel's words that it was the DNA evidence relating to C.D. that he believed counsel should have reviewed. In our view, the claim being made on appeal was included in the *pro se* petition. We see no impropriety.

¶ 21    The State also argues that defendant could have raised his claim of ineffective assistance of trial counsel on direct appeal and, therefore, the claim is forfeited. However, defendant alleged in his petition that appellate counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness on direct appeal. Because the inclusion of a claim of ineffective assistance of appellate counsel acts as an exception to the waiver doctrine in postconviction proceedings (*People v. Turner*, 187 Ill. 2d 406, 412-13 (1999)), we reject the State's argument.

¶ 22    Nevertheless, summary dismissal of defendant's petition was proper. We find that defendant has not satisfied the prejudice prong of the *Strickland* test, notwithstanding the low standard by which postconviction petitions are judged at the first stage of proceedings. Even if trial counsel had reviewed the DNA evidence pertaining to C.D. prior to trial, and even if counsel had been able to use that evidence to cross-examine Wildhaber Pfoser in such a way as to completely negate her testimony, the evidence of defendant's guilt would still have been

overwhelming. T.G. identified defendant in a photo array, a lineup, and at trial as the man who pulled a weapon on her, ordered her to "suck [his] dick," and then penetrated her with his penis while she was "on all fours." C.D. identified defendant in a lineup and in court as the man who pulled a weapon on her, ordered her to "suck [his] dick," and then penetrated her with his penis while she was "on all fours." O.R. identified defendant in a photo array and in court as the man who pulled a weapon on her, ordered her to "suck [his] dick," and then penetrated her with his penis while she was "on all fours." Defendant provided the police with a phone number that both C.D. and O.R. testified defendant had used to contact them, and DNA testing tied defendant to T.G.'s assault. Thus, the State's evidence at trial, even without Wildhaber Pfoser's testimony, was overwhelming and precludes a finding of arguable prejudice.

¶ 23    There is no reasonable probability that the trial outcome would have been different even if counsel had reviewed the DNA evidence pertaining to C.D. and used that evidence to completely impeach the State's DNA expert with regard to that particular assault. As such, defendant's claim of ineffectiveness was frivolous and patently without merit and was properly dismissed by the circuit court. See *People v. Richardson*, 2015 IL App (1st) 113075, ¶ 21 (where evidence of guilt was overwhelming, it was not arguable that the defendant was prejudiced by counsel's alleged deficient performance, and the petition lacked an arguable basis in law); *People v. Dobbey*, 2011 IL App (1st) 091518, ¶ 69 (where evidence of guilt was overwhelming, the defendant could not demonstrate arguable prejudice and summary dismissal of the postconviction petition was proper).

¶ 24    With regard to defendant's claim that appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal, we note that the two-prong *Strickland* test also applies to claims of ineffective assistance of appellate counsel. *People v. Enis*, 194 Ill. 2d 361, 377

- 11 -

(2000). Unless an underlying issue has merit, there can be no prejudice from appellate counsel's failure to raise that issue on appeal. *People v. Stephens*, 2012 IL App (1st) 110296, ¶ 109. Because defendant's claim of ineffective assistance of trial counsel is not meritorious, his claim of ineffective assistance of appellate counsel for failing to raise trial counsel's ineffectiveness on appeal is equally nonmeritorious, given the lack of prejudice. *Id.* ¶¶ 109-10. Defendant has failed to set forth an arguable claim of ineffective assistance of appellate counsel.

¶ 25    In summary, where defendant cannot show arguable prejudice resulting from trial counsel's alleged deficiencies, his claims of ineffective assistance of trial and appellate counsel lack an arguable basis in law. See *People v. Morris*, 236 Ill. 2d 345, 354 (2010); *Hodges*, 234 Ill. 2d at 16. In these circumstances, summary dismissal of the petition was proper.

¶ 26    For these reasons, we affirm the judgment of the circuit court.

¶ 27    Affirmed.